UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

SHERYL LYNN STANCHFIELD,

    Plaintiff,

       v.                       No. 3:15-cv-777(WIG)

CAROLYN COLVIN,
Acting Commissioner of
Social Security,

    Defendant.
_____X

## **RECOMMENDED RULING ON PENDING MOTIONS**

Plaintiff Sheryl Lynn Stanchfield has filed this appeal of the adverse decision of the Commissioner of Social Security denying her application for disability insurance benefits ("DIB"). Plaintiff now moves, pursuant to 42 U.S.C. § 405(g), for an order reversing this decision, or in the alternative remanding the matter for rehearing. [Doc. # 16]. Defendant has responded with a motion to affirm the decision of the Commissioner. [Doc. # 17]. The undersigned heard oral argument on November 16, 2016. For the reasons that follow, the Court recommends the decision of the Commissioner be affirmed.

### **Legal Standard**

The standards for determining a claimant's entitlement to disability benefits, the Commissioner's five-step framework for evaluating disability claims, and the district court's review of the Commissioner's final decision are well-established. The Court is following those standards, but does not repeat them here.

**Background**

This is the second time Plaintiff's claim has been before the court. Plaintiff first filed her DIB application in 2007, alleging a disability onset date of June 30, 2005. Her claims were denied at both the initial and reconsideration levels. Then, a hearing was held before administrative law judge James E. Thomas (the "ALJ"). On September 3, 2009, the ALJ issued a decision denying Plaintiff's claim. The Appeals Counsel denied review. Plaintiff then filed an appeal in this court.

The first appeal was resolved in October 2011 when Judge Warren W. Eginton adopted Magistrate Judge Fitzsimmons's Recommended Ruling. *See Stanchfield v. Colvin*, No. 3:09-cv-2105(HBF)(WWE), Doc. # 33. The Recommended Ruling reasoned that the ALJ's 2009 decision should be reversed and the matter remanded for additional proceedings. Judge Fitzsimmons determined that the ALJ did not inquire into any conflict between the testimony of the vocational expert ("VE") and the Dictionary of Occupational Titles ("DOT") codes. She remanded the case for the ALJ to reconsider Plaintiff's residual functional capacity, to obtain evidence from a VE, and to explain any conflicts between the testimony of the VE and the DOT. (R. 433).

Upon remand, the ALJ held two additional hearings and issued a second unfavorable decision dated August 30, 2013. The Appeals Council denied review of the ALJ's 2013 decision, making it the final decision of the Commissioner. Plaintiff then brought the instant appeal.[1] In this action, Plaintiff's alleged onset date is also the date she was last insured for disability benefits; thus, June 30, 2005 is the relevant time period.

---

[1] In the meantime, on February 22, 2011, Plaintiff filed an application for supplemental security income. The Connecticut Disability Determination Services issued a favorable decision on that

Plaintiff was born in 1954. (R. 356). She has completed high school. (*Id.*). She last worked in 2004 making telephone pole parts. (*Id.*). Plaintiff has past work experience as a home health aide, waitress, and packer. (R. 356-60). She is alleging disability based on both physical and mental impairments.

At oral argument the parties stipulated to Plaintiff's medical background as presented in the briefs accompanying both parties' motions.[2] The Court adopts these facts and incorporates them by reference herein.

### The ALJ's 2013 Decision

The ALJ followed the sequential evaluation process for analyzing disability claims. At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity during the relevant period. (R. 400). At step two, the ALJ determined that Plaintiff's severe impairments included degenerative disc disease, status post back surgeries; and degenerative joint disease of the shoulder, status post surgery. (R. 401). At step three, the ALJ found that Plaintiff did not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments. (R. 403). Next, the ALJ determined Plaintiff retained the following residual functional capacity[3]:

> Plaintiff can perform light work except she is limited to lifting 15 pounds occasionally and 10 pounds frequently; she can occasionally climb ramps and stairs, balance, stoop, kneel, crouch, and crawl. She cannot climb ladders, ropes,

---

application upon concluding Plaintiff was disabled for purposes of Title XVI as of February 11, 2011. (R. 397).

[2] The Commissioner noted an objection to one of Plaintiff's factual characterizations. Specifically, Plaintiff's brief claims that on June 4, 1998, "Dr. McCarthy stated that she was not getting better and that she was totally disabled." ECF # 16 at 5. The Commissioner is correct that the record actually reads as follows: "[Plaintiff] might benefit from a functional capacities assessment to determine whether or not she is, in fact, totally disabled…" (R. 308).

[3] Residual functional capacity ("RFC") is the most a claimant can do in a work setting despite her limitations. 20 C.F.R. § 404.1545(a)(1).

3

>or scaffolds.  She can perform frequent reaching in all directions except she
>cannot perform reaching or lifting overhead with her right upper extremity.

(R. 403-08).  At step four, the ALJ found Plaintiff was unable to perform any past relevant work.  (R. 408).  Finally, at step five, the ALJ relied on the testimony of a VE to find that there are jobs in significant numbers in the national economy Plaintiff can perform.  (R. 409).  Accordingly, the ALJ found Plaintiff not to be disabled.

## Discussion

Plaintiff raises several issues on appeal, which the Court will discuss in turn.

**1. The Step Two Finding**

First, Plaintiff argues that the ALJ erred in not finding her mental impairment to be severe, and in not evaluating all of her impairments in combination as the regulations require.  This argument cannot prevail.

An impairment is severe when it significantly limits a claimant's ability to do basic work activities.  *See* 20 C.F.R. § 404.1521.  Here, there is a dearth of evidence from the relevant time period to indicate a severe mental impairment.  The evidence upon which Plaintiff relies in support of her argument is largely from well before and well after the time period at issue.  While one treatment note from 2005 indicates that Plaintiff felt depressed and anxious and was prescribed a trial of Zoloft, (R. 314), this is not enough to meet the severity requirement.  *See Talbot v. Colvin*, No. 3:13-CV-1249 GTS, 2015 WL 5512039, at *4 (N.D.N.Y. Sept. 15, 2015) ("The mere presence of a disease or impairment, or establishing that a person has been diagnosed or treated for a disease or impairment is not, itself, sufficient to deem a condition severe.") (internal quotation marks omitted).  Even more, there is no evidence from the relevant period

that there were any functional limitations stemming from an alleged mental impairment such that the impairment significantly limited Plaintiff's ability to do basic work activities.

At oral argument, Plaintiff's counsel posited that Plaintiff's mental impairment *could have* impacted her pain tolerance, and the ALJ was required to consider her impairments in combination. This argument is tenuous at best: there is no evidence that Plaintiff's pain was in fact exacerbated by any mental condition she may have had.

Even if Plaintiff did successfully show an error at step two, remand would not follow here. It is well-established that "the standard for a finding of severity under Step Two of the sequential analysis is *de minimis* and is intended only to screen out the very weakest cases." *McIntyre v. Colvin*, 758 F.3d 146, 151 (2d Cir. 2014). An AJL's finding that an impairment is not severe at step two is harmless error when, as here, the ALJ finds other severe impairments and continues with the sequential evaluation. *See Jones-Reid v. Astrue*, 934 F. Supp. 2d 381, 402 (D. Conn. 2012), *aff'd,* 515 F. App'x 32 (2d Cir. 2013). In this circumstance, "because the ALJ did find several severe impairments and proceeded in the sequential process, all impairments, whether severe or not, were considered as part of the remaining steps." *Id.* Therefore, even if the ALJ had erred at step two, that error is harmless.

2. The RFC

Plaintiff next argues that the ALJ erred in assessing her RFC because he did not properly take into account her right collarbone subluxation.[4] Specifically, Plaintiff argues that subluxation would make the lifting requirements in the RFC improper. The Court disagrees and finds that the RFC is supported by substantial evidence.

---

[4] Subluxation means "partial dislocation (as of one of the bones in a joint)." *See* http://www.merriam-webster.com/dictionary/subluxation.

Medical records support the RFC.  For example, Plaintiff's treating orthopedist, Dr. Rubin, indicated on September 16, 2005 and on October 4, 2005 that Plaintiff could lift 15 pounds with her right arm.  (R. 999, 1000).  It was not until December 2005, (six months after the relevant period), that Dr. Rubin's assessment changed to 10 pounds.  (R. 1001).  In addition, the subluxation symptoms did not begin until January 2006, about 18 months after the relevant period.  (*See* R. 195, 199, 201).  Further, an MRI of the right shoulder from June 27, 2005 indicated only mild cartilage degeneration and degenerative change of the glenohumeral joint.  (R. 181).  And, an independent medical examination from November 2005 concluded that Plaintiff would be capable of working full-time in a modified duty position with no lifting of more than 10-15 pounds.  (R. 177).  In all, there is at the very least substantial evidence to support the assessed RFC.

### 3. The Credibility Assessment

Plaintiff next argues that the ALJ made erroneous findings of non-compliance with medical treatment in evaluating her credibility.  The ALJ found Plaintiff's allegations not to be completely credible, in part because she had not been fully compliant with treatment around the relevant time period.  (R. 406).  The ALJ observed that Plaintiff reported to Dr. Rubin in June 2005 that she had not attended her final physical therapy session because she felt it was not helping and causing more pain.  (*Id.*).  The ALJ also noted physical therapy records indicating Plaintiff had been "very inconsistent with therapy for her shoulder," and that she needed "consistency to progress with motion and strength."  (R. 962).

SSR 96-7p instructs as follows with respect to a claimant's compliance with medical treatment:

> …[T]he individual's statements may be less credible if the level or frequency of treatment is inconsistent with the level of complaints, or if the medical reports or

6

>records show that the individual is not following the treatment as prescribed and there are no good reasons for this failure. However, the adjudicator must not draw any inferences about an individual's symptoms and their functional effects from a failure to seek or pursue regular medical treatment without first considering any explanations that the individual may provide, or other information in the case record, that may explain infrequent or irregular medical visits or failure to seek medical treatment.

*Titles II & XVI: Evaluation of Symptoms in Disability Claims: Assessing the Credibility of an Individual's Statements*, SSR 96-7P (S.S.A. July 2, 1996).  Here, the ALJ abided by SSR 96-7p.  He did not draw any inferences about Plaintiff's symptoms without first considering her reason for missing physical therapy.  He considered her explanation that physical therapy was not helping and causing more pain.  He also considered, as he was supposed to, records noting Plaintiff's "very inconsistent" attendance at physical therapy. (R. 962).  Further, there is no indication in physical therapy records that the therapy was not helpful.  In all, the ALJ made an appropriate credibility determination that is supported by substantial evidence.

Moreover, as this Court has explained on numerous occasions, it is the function of the Commissioner, and not the reviewing court, to appraise the claimant's credibility.  *See Carroll v. Sec'y of Health & Human Servs.*, 705 F.2d 638, 642 (2d Cir. 1983).  "Credibility findings of an ALJ are entitled to great deference and therefore can be reversed only if they are 'patently unreasonable.'"  *Pietrunti v. Dir., Office of Workers' Comp. Programs*, 119 F.3d 1035, 1042 (2d Cir. 1997) (citing *Lennon v. Waterfront Transport,* 20 F.3d 658, 661 (5th Cir.1994)).   There is no such unreasonableness here.

    **4.  The ALJ's Refusal to Recuse Himself**

Finally, Plaintiff argues that the ALJ should have recused himself when Plaintiff's claim was remanded to him for additional proceedings. There is no legal authority to support this position.

The regulations address disqualification of an ALJ: "An administrative law judge shall not conduct a hearing if he or she is prejudiced or partial with respect to any party or has any interest in the matter pending for decision." 20 C.F.R. § 404.940. Here, Plaintiff argues that because the ALJ found Plaintiff not to be fully credible in the 2009 decision, he had already made a determination regarding Plaintiff's truth-telling and would be unable to make a fair subsequent credibility finding. Plaintiff presented this argument to the ALJ, who refused to recuse himself. In his decision, the ALJ explained:

> Under 20 C.F.R. 404.1529(c) and SSR 96-7p, I am required by law to assess the credibility of the claimant's *allegations* based on consideration of the totality of the evidence of record and based on the credibility factors listed therein. The prior decision did just that; it did not make any finding or statement as to the claimant's character, her state of mind when making her allegations, or even whether she "told the truth." Instead, it stated that the allegations themselves were not fully credible because they were not consistent with or supported by the (1) activities of daily living, (2) observations of the claimant's behavior at the hearing, (3) the objective medical evidence, and (4) the opinion evidence of record. These are all permissible factors to consider and do not establish or suggest prejudice, bias, or any partiality on my part.

(R. 298) (emphasis in original). What the ALJ was explaining was that he had evaluated, as he must pursuant to the regulations, whether the allegations Plaintiff was making were credible insofar as they were supported by and consistent with the evidence of record. This nature of credibility assessment is very different from exhibiting the prejudice or partiality required for recusal. In fact, it is clear that "an ALJ's credibility assessments … do not constitute bias." *Reddy v. Commodity Futures Trading Comm'n*, 191 F.3d 109, 120 (2d Cir. 1999). In order to demonstrate bias warranting recusal, a claimant must show that the ALJ exhibited a "deep-seated

8

favoritism or antagonism that would make [a] fair judgment impossible." *Id.* at 119 (quoting *Liteky v. United States,* 510 U.S. 540, 555 (1994)).  When, as here, an ALJ's credibility assessment is based on inconsistencies between record evidence and the claimant's subjective complaints, an ALJ does not – without more – demonstrate bias.  *See Whitfield v. Astrue*, 476 F. App'x 408, 409 (2d Cir. 2012).  The Court finds no error.

## Conclusion

After a thorough review of the administrative record and consideration of all of the arguments raised by Plaintiff, the Court concludes that the ALJ did not commit any legal errors and that his decision is supported by substantial evidence.  Accordingly, the Court recommends that Defendant's Motion to Affirm the Decision of the Commissioner should be granted and that Plaintiff's Motion to Reverse should be denied.

This is a Recommended Ruling.  *See* Fed. R. Civ. P. 72(b)(1).  Any objection to this Recommended Ruling must be filed within 14 days after service.  *See* Fed. R. Civ. P. 72(b)(2).  In accordance with the Standing Order of Referral for Appeals of Social Security Administration Decisions dated September 30, 2011, the Clerk is directed to transfer this case to a District Judge for review of the Recommended Ruling and any objections thereto, and acceptance, rejection, or modification of the Recommended Ruling in whole or in part.  *See* Fed. R. Civ. P. 72(b)(3) and D. Conn. Local  Rule 72.1(C)(1) for Magistrate Judges.

SO ORDERED, this  28th  day of November, 2016, at Bridgeport, Connecticut.

       */s/ William I. Garfinkel*
      WILLIAM I. GARFINKEL
      United States Magistrate Judge